**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION; WARNER BROS. ENTERTAINMENT INC.; TWENTIETH CENTURY FOX FILM CORPORATION; COLUMBIA PICTURES INDUSTRIES, INC.; UNIVERSAL CITY STUDIOS LLC; UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC; and DISNEY ENTERPRISES, INC., | **CIVIL ACTION NO. 15-CV-5819 (PAC)**<br><br>**DECLARATION OF FARNAZ M. ALEMI IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | |
| v. | |
| JOHN DOES, JANE DOES and/or XYZ CORPORATIONS d/b/a MOVIETUBE; and JOHN DOES, JANE DOES and/or XYZ CORPORATIONS 2-100, | |
| Defendants. | |

Farnaz M. Alemi declares and says:

1.     I am Vice President & Senior Legal Counsel, Global Content Protection Internet at the Motion Picture Association of America, Inc. (the "MPAA"). I have worked in the field of intellectual property infringement and litigation for eight years, and I have been employed by the MPAA since 2013.

2.     Founded in 1922, the MPAA is the not-for-profit trade association that addresses issues of concern to the United States motion picture industry. The MPAA's members depend upon effective copyright protection to protect the motion picture and television content that they finance, create, and distribute.

3.     I submit this declaration on behalf of plaintiffs Paramount Pictures Corporation, Warner Bros. Entertainment Inc., Twentieth Century Fox Film Corporation, Columbia Pictures

1

Industries, Inc., Universal City Studios LLC, Universal Studios Home Entertainment LLC, and Disney Enterprises, Inc. (collectively, "Plaintiffs") in support of their motion for preliminary injunction against defendants John Does, Jane Does and/or XYZ Corporation d/b/a MovieTube; and John Does, Jane Does and/or XYZ Corporations 2-100 (collectively, "Defendants").

4.     If called upon as a witness, I could testify to the following from personal knowledge and/or a review of the MPAA's business files in this matter.

5.     I am familiar with Plaintiffs' motion pictures and television programs (as defined in paragraph 2 of the Complaint, "Plaintiffs' Works"), as well as Plaintiffs' trademarks (as defined in paragraph 23 of the Complaint, "Plaintiffs' Marks") and copyrights (as defined in paragraph 2 of the Complaint, "Plaintiffs' Copyrights") used in connection with Plaintiffs' Works.

**Defendants' Business**

6.     Using the MovieTube name and design below,



Defendants own and operate a ring of at least 29 pirate websites (the "MovieTube Websites," listed below), which: (i) aggregate, organize and provide access to extensive libraries of unauthorized copies  ("the Infringing Copies") of Plaintiffs' Works; (ii) provide viewing windows on the websites so that users can watch Infringing Copies without leaving Defendants' websites; and (iii) market their offering of Infringing Copies for viewing by displaying for each television program or motion picture: the title, the principal cast and director, a plot synopsis, an IMDB rating, one of Plaintiffs' promotional posters or a piece of "key art," and/or a playable

DWT 26876383v7 0067328-000013

preview video. Screenshots of all of the MovieTube Websites are attached hereto as **Exhibit A,** a sample of which is displayed below:



7.      The interconnected ring of websites making up the MovieTube Websites, which have similar interfaces and provide links to each other, are located at the following Uniform Resource Locators (URLs): MovieTube.tw, MovieTube.ph, TVStreaming.cc, MovieTube.sx, MovieTube.pw, MovieTubeNow.com, MovieTube.tf, MovieTube.co, MovieOnDrive.com, MovieTube.vc, TuneVideo.net, MovieTube.mn, MovieTube.cc, Watch33.tv, MovieTube.cz, Anime1.tv, MovieTube.pm, FunTube.co, MovieTube.la, KissDrama.net, MovieTube.so, MovieTube.click, MovieTubeHD.co, MovieTubeHD.net, MovieTubeHD.org, MovieTubeHD.tv, MovieTubeHD.us, MovieTubenow.in and TuneMovie.me.

8.      On each of the MovieTube Websites, selecting a movie or television show, such as by clicking on a thumbnail image in the screenshot above, leads to a page (a "Watch Page") for that movie or television show. All Watch Pages on the MovieTube Websites have a similar structure that is dominated by a viewing window. The screenshot below shows a sample Watch

3

Page.



9.      The viewer window is the key component of a Watch Page. The viewer window consists of a video player that plays a video file. A MovieTube Website may either fill the viewer window with (a) a video player that the MovieTube Wesbite supplies directly or (b) a frame that a third-party site fills with a video player. A MovieTube Website makes the decision as to which method will be used for a given Watch Page. When a MovieTube Website supplies the video player, it is one known as the Video.js player. Third-party sites may use this player or another video player.

10.     Whether a MovieTube Website fills the viewer window with a video player that it supplies directly or frames a third-party site that supplies a player, the player accesses a video

DWT 26876383v7 0067328-000013

file supplied by a third-party hosting server. In both cases, a user simply sees a viewer window playing a video in the context of a MovieTube Website. This approach to rendering videos supplied by third-party sources is known as "embedding" videos.

11.     For those Watch Pages that utilize the Video.js player, it is easy for the user to save (that is, to download) a local copy of the video file. On a personal computer, the user needs only to right-click on the viewer window and select "Save Video As…" from the menu that appears. By saving the video file, the user can watch it at any later time without accessing a MovieTube Website. The user also can redistribute the copy through other services. A sample of the "Save Video As…" option being selected on a film on a Watch Page is shown in the screenshot below.



DWT 26876383v7 0067328-000013

12.     By embedding infringing content found elsewhere on the Internet, pirate sites such as the MovieTube Websites can offer extensive libraries of popular copyrighted content without any hosting costs to store content, bandwidth costs to deliver the content, and of course licensing costs to legitimately acquire the content. Further, because the pirate sites are embedding the content rather than linking to it, their users never need to leave their sites, so the pirate sites can profit in various ways, such as from advertising to these users, selling them subscriptions, or soliciting donations.

13.     Defendants' MovieTube Websites appear to consumers to be designed as legitimate websites operated by Plaintiffs and/or authorized to stream Plaintiffs' Works. Defendants' MovieTube Websites bear sophisticated graphics, including cover art for the catalog of Infringing Copies and other unauthorized content made available on the website, as well as other indicia that would more typically appear on a website streaming genuine content, including links to Defendants' Facebook account and Twitter feed, references to a "MovieTube App" and use of legitimate third-party trademarks such as Google Play, Windows and Mac:



14.     Defendants have imbued the MovieTube Websites with user-friendly interfaces, organizing content by genre of work and year of release. For example, on MovieTube.co,

DWT 26876383v7 0067328-000013

Defendants arrange the Infringing Copies into the genres: Action, Adventure, Animation, Biography, Comedy, Crime, Drama, Family, Fantasy, History, Horror, Korean, Mystery, Romance, Sci-Fi, Thriller and War. On Watch33.tv, Defendants arrange Infringing Copies into a similar set of genres and also by year, into: 2014, 2013, 2012, 2011, 2010, 2000s.

15.     Similar to legitimate video streaming sites, Defendants flag newly released content and feature-length motion pictures by promoting them as "Newly Released," in "HD," "In Cinema," or "Newly Added," as shown below:



16.     Using a United States IP address, we accessed Infringing Content from each of Defendants' MovieTube Websites, streaming a total of 268 Infringing Copies of Plaintiffs' Works, including television programs and feature-length motion pictures, and downloading 20 Infringing Copies of Plaintiffs' Works. The streaming copies often utilized Plaintiffs' Marks.

7

Screenshots of Infringing Copies streaming on the MovieTube Websites are attached hereto as **Exhibit B**.

17.     Defendants' websites are "closed" websites in that they do not allow users to make additions or changes to the MovieTube Websites, such that the content streamed through the websites can only be selected and provided by the websites' operators.

18.     Defendants appear to derive revenue through the display of digital advertisements,[1] served by at least one or more of the advertising service providers: AdCash, Propeller Ads Media, MGID and Matomy Media Group. Examples of the advertisements that appear to be displayed to generate revenue for the Defendants are shown in Exhibit A, examples of which are shown below:






---

[1] The digital advertisements were either pop-up advertisements that open in a new window or tab; or they were frame or display advertisements that appear on the website itself.

To increase revenue from advertising, Defendants actively drive traffic to their websites. Specifically, Defendants actively promote their websites and Infringing Copies of Plaintiffs' Works through social media platforms, including their Facebook account and their Twitter feed ("Defendants' Social Media Accounts"). Screenshots of Defendants' Social Media Accounts are attached hereto as **Exhibit C**, and depicted below:



19.    Each of the MovieTube Websites provides a hyperlink to Defendants' Facebook account, with a majority of those websites also providing a hyperlink to Defendants' Twitter account. Comments, "likes" and "shares" from Defendants' Facebook account and "tweets" from Defendants' Twitter accounts are then embedded or integrated directly on Defendants' MovieTube Websites. *See* Exhibit A. Defendants also allow users to "like" or "share" on Facebook or "tweet" a link to Infringing Copies while they are streaming the content and others' comments about the Infringing Copies are included so they can be viewed while streaming the Infringing Copies.

20.    As shown in Exhibit A, Defendants' websites are rife with comments from users (1) complaining about quality, including of Infringing Copies made by taking a video or a "cam"

of a theatrical performance; (2) instructing other users to stop complaining given that the movies provided on the MovieTube Websites are free; (3) asking about releases of different versions of the Infringing Copies; and (4) noting that the Plaintiffs' Works being infringed are not yet released for home consumption.

21.     Defendants also promote the MovieTube Websites through the use of meta-tags and keywords designed to maximize the MovieTube Websites' visibility and priority in search results from Internet search engines. For example, the meta-tag for "description" in the source code of each MovieTube Website reads: "MovieTube is the No.1 site to watch newly released movies and tv series. It has the largest movie database, fastest streaming speed, and it's 100% free!" *See* **Exhibit D** hereto.

22.     According to the website analysis service SimilarWeb (located at http://www.similarweb.com/), Defendants in a recent single month, have attracted over 81 million visits to the MovieTube Websites, including almost 61 million visits from users in the United States. Screenshots of SimilarWeb traffic statistics for the MovieTube Websites are attached hereto as **Exhibit E**.

## Common Ownership

23.     The MovieTube Websites are commonly owned. First, Defendants themselves



claim common ownership of the MovieTube Websites through use of the common logo and claim of copyright by MovieTube ("© 2014-2015 MovieTube"). On the MovieTube Websites, Defendants direct users to choose other MovieTube Websites purportedly hosted at the nearest server (and hyperlinking to those websites) based on the location of the user, as shown below:

DWT 26876383v7 0067328-000013



24.     Other evidence of common ownership include:

    a.     identical and similar WHOIS domain name registration information, including registration of all but one of the MovieTube Websites to the WHOIS registrant email address firestudio@ymail.com (and registration of the remaining domain using a private registration proxy service);

    b.     identical website design templates (*see* Exhibit A);

    c.     all of the MovieTube Websites (other than MovieTube.la) have the same Publisher ID (194514) with the advertising service provider Propeller Ads Media; and

    d.     all of the MovieTube Websites contain a link in the same part of the page noting "App Download" that points to the website for Defendants' purported "MovieTube App" located at http://www.MovieTubeAndroid.com/.

**Defendants' Use of False Identities and Attempts to Avoid Detection and Enforcement**

25.     The MovieTube Websites are devoid of any identifiable names or real addresses, and Defendants communicate with potential customers exclusively through email and Defendants' Social Media Accounts, without revealing their true identities.

26.     The Internet Corporation for Assigned Names and Numbers (ICANN), the body that governs domain names, has adopted the Uniform Domain Name Dispute Resolution Policy (the "ICANN Policy"), which requires each registrant of a domain name to provide complete and accurate information to identify the registrant. Attached hereto as **Exhibit F** is a true and correct copy of the ICANN Policy. This registration information is compiled in a network of publicly-available databases commonly referred to as WHOIS.

27.     Despite this requirement, Defendants' WHOIS domain name registrant names and addresses are incomplete or false, containing, for example, non-existent street addresses or

names of a large region where there should be a street address. In other instances, the

Defendants' listed names and addresses are concealed by Defendants' use of a privacy protection

service. Screenshots of WHOIS reports for each of the MovieTube Websites including server

information for the websites are attached hereto as **Exhibit G**. We have been unable to verify

any of the names and addresses in Defendants' domain name registrations as being genuine. For

example:

> a.      The address "west coast, singapore,"—used as the WHOIS registrant street address for sixteen (16) of the domain names—is the name of a region, not a street address. This information is incomplete and unverifiable.

> b.      Defendants used the street address BLK 56 Holland Road, 121113 Queen's Town as the registrant street address in two different countries (Slovakia and Switzerland) for two different domains, and used the street address BLK 56 Holland Road in Austria for a third domain. A Google Maps search for "BLK 56 Holland Road, 121113 Queen's Town" yields the result Golden Mile Food Centre, a complex of food stalls in Singapore.

> c.      The domain names MovieTube.tw and MovieTube.cz were registered to Chee James at Blk 225 Lor 8 Toa Payoh, which is the location of a large multi-unit complex with no unit specified. A visit to the physical address did not show a Chee James or James Chee to occupy any unit in the building.

> d.      The domain names MovieTube.co and FunTube.co were registered to Chee James and Farick Dannies, respectively, both residing at the address 686 Chao Chu Kang, Singapore (no unit specified). A visit to the physical address showed that it is a multi-story car parking lot. The same visit did not uncover a Chee James or Farick Dannies at any of the residential addressees 686A, 686B, 686C or 686D Chao Chu Kang.

> e.      The domain MovieOnDrive.com is registered to a Seong Yong at 301 Woodlands Street 31, Singapore. This is an incomplete address without a unit number. The residential units at this address are identified by three-digit unit numbers: units 217 (level 2), 219-225 (level 2), 209-213 (levels 3-4) and 215-221 (levels 3-4). (The first floor is occupied by a supermarket.) A visit to this physical address did not show a Seong Yong to occupy any unit in the building.

28.      Due to Defendants' deception and concealment, we are currently unaware of their

true identities and locations. This comports with my experience that parties who operate websites that are dedicated to massive copyright infringement via the Internet often take every means to conceal their identities in an effort to avoid detection.

29.     Nonetheless, we have identified a unique email address used by Defendants in conjunction with their MovieTube Websites: firestudio@ymail.com, the WHOIS registrant email address used to register all of the domain names of the MovieTube Websites other than the one that was registered through a private registration proxy service. We have communicated with Defendants through the firestudio@ymail.com email address.

30.     Defendants previously registered, owned and controlled the domain names YouTubeOnFire.com, YouTubeOnSale.com, YouTubeMainPage.com, YouTubeSoSexy.com and YouTubeOn.com (the "YouTube Domains"). Historical WHOIS domain name registration information for the YouTube Domains is attached hereto as **Exhibit H**. As shown in Exhibit H, the YouTube Domains were all registered to the email address firestudio@ymail.com and were otherwise registered using information matching the domain names of the MovieTube Websites.

31.     Defendants continue to maintain a Facebook account called "youtubeonsale.com"



and identified by their MovieTube design                . Screenshots of Defendants'

"youtubeonsale.com" Facebook account are attached hereto as **Exhibit I**.

32.     The YouTube Domains were subject to a Uniform Domain Name Dispute Resolution ("UDRP") arbitration proceeding pursuant to which it was ordered transferred to Google. The decision in that UDRP proceeding is attached hereto as **Exhibit J**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23d day of _July_____ 2015 in Los Angeles, California

Farnaz M. Alemi

14